UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 09-317** |
| **RUDY CABRERA** | **SECTION "B"(5)** |

## ORDER AND REASONS

Before the Court are defendant Rudy Cabrera's opposed motions for compassionate release (Rec. Docs. 351, 374). The parties have filed responses and replies (Rec. Docs. 358, 361, 369, 375). After careful consideration,

**IT IS ORDERED** that defendant Rudy Cabrera's motions for compassionate release (Rec. Docs. 351, 374) are **GRANTED**, reducing his sentence to time served, with all other terms and conditions previously imposed to remain in effect.[1] *See* Rec. Doc. 238 at 3-4. **This release order is executory upon satisfaction of the following ordered provision:**

**IT IS ORDERED that prior to release defendant Rudy Cabrera shall undergo a 14-day quarantine and receive medical clearance** to minimize the possibility of any spread of COVID-19 from the inmate to the public, including probation and others. Mr. Cabrera shall report to the nearest federal probation office from the location of release within 72 hours after his release;

---

[1] The orientation and life skills program has been substituted with the cognition program; outpatient drug/alcohol treatment and inpatient treatment are also imposed if any of those conditions are deemed necessary by U. S. Probation. Probation is also granted discretion to assess costs of supervision conditions, in whole or in part, if it determines Mr. Cabrera can afford such costs.

1

failing that, a warrant for his arrest shall issue. He will still serve a ten-year term of supervised release subject to review after the fifth year and full compliance with all conditions of supervision.

## I. FACTS AND PROCEDURAL HISTORY

On April 7, 2010, defendant Rudy Cabrera pled guilty to conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A). Rec. Doc. 102. Defendant also admitted to a bill of information charging that he had one previous felony drug conviction. *Id.* He signed a factual basis admitting to participating in a drug conspiracy and to possession of firearms in connection with his drug offense. Rec. Doc. 101 at 13-14. In March 2011, this Court sentenced defendant to 240 months imprisonment in the custody of the Bureau of Prisons ("BOP"). Rec. Doc. 238. Defendant is currently housed at the Bastrop, Federal Correctional Institution ("Bastrop") with a projected release date of January 17, 2027. Rec. Doc. 374 at 2. Ostensibly, during incarceration defendant has had zero incidents and "no write-up[s]." Rec. Doc. 351-1 at 5; Rec. Doc. 369 at 2.

On May 12, 2020, defendant applied for a sentence reduction with the warden. Rec. Doc. 351-1 at 1. The warden denied defendant's request on June 19, 2020. Rec. Doc. 361-1. Defendant,

however, did not receive this disposition within thirty days of his initial application to the warden, and thus on June 14, 2020, filed, *pro se*, a motion for compassionate release with this Court. Rec. Doc. 351; *see id.* at 1. As an extraordinary and compelling reason for early release, defendant cites an elevated risk of severe illness from COVID-19 due to obesity, diabetes, high blood pressure, immunocompromised condition, several Methicillin-Resistant Staphylococcus epidermidis ("MRSE") infections, and one sepsis infection. *Id.* at 3. According to the Center for Disease Control and Prevention ("CDC"), the risk factors for COVID-19 include asthma, cancer, chronic kidney disease, chronic lung disease, diabetes, hemoglobin disorders, immunocompromised state, liver disease, serious heart conditions, and severe obesity. *See People with Certain Medical Conditions*, CDC (Oct. 14, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. No medical records were attached to defendant's motion. *See* Rec. Doc. 351; *see also* Rec. Doc. 361 at 13. The government, nevertheless, obtained defendant's medical records from 2018-2020 and offered to provide the records upon the Court's request, "but did not want to put them in the public record." *Id.* at 13-14. Defendant also cites family circumstances and changes to federal statutory sentencing law as extraordinary and compelling reasons for

3

compassionate release. Rec. Doc. 351 at 3; Rec. Doc. 374 at 3-4.

On June 28, 2020, defendant reiterated his request due to two or more cases of COVID-19 infections at Bastrop, as well as his close proximity to a unit on lockdown because of the virus. Rec. Doc. 358 at 1. As of July 27, 2020, there were at least five staff and four inmates infected with COVID-19. Rec. Doc. 369 at 1. He claims staff members in defendant's unit were allegedly not wearing masks, "deliberately putting [inmates] in danger." *Id.*

On May 20, 2021, defendant moved to enroll Barry Ranshi as counsel of record and the Court granted this motion on May 24, 2021. Rec. Docs. 372-73. Also on May 24, 2021, defendant filed another motion for compassionate release, now with the assistance of counsel. Rec. Doc. 374. Both motions for compassionate release are currently before the Court.

## II. LAW AND ANALYSIS

### A. Exhaustion of Administrative Remedies

Before a federal court will assess the merits of a motion for compassionate release, defendants must show that they "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c).

The Fifth Circuit has clarified that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts*." United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (Mem.) (U.S. Dec. 7, 2020). The defendant bears the burden of demonstrating exhaustion. *See, e.g.*, *United States v. Rodriguez*, No. 15-198, 2020 WL 5369400, at *2 (E.D. La. Sept. 8, 2020). If the defendant can show exhaustion of all administrative remedies, the court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] § 3553(a)" and upon a finding that "(i) extraordinary and compelling reasons warrant such a reduction" and "(ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The government concedes exhaustion in this case. Rec. Doc. 361 at 1. Defendant applied for "compassionate release" to the warden of his prison on May 12, 2020. Rec. Doc. 351 at 2. After waiting the requisite thirty days, defendant did not receive a disposition from the BOP. *Id.* Accordingly, defendant filed a motion for compassionate release with this Court on June 14, 2020. Rec. Doc. 351. Because defendant has presented his request for compassionate release to the BOP, and because the government concedes exhaustion, we proceed to the merits of defendant's motions.

**B. Extraordinary and Compelling Circumstances**

The Sentencing Commission identified four "extraordinary and compelling reasons" that may warrant a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) "other reasons." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) (2018). Though not binding, courts can consider these four factors in determining what constitutes extraordinary and compelling reasons warranting a sentence reduction. *See United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Deville*, No. 15-293, 2020 WL 4243318, at *1-2 (E.D. La. Sept. 17, 2021). The defendant bears the burden to "convince the district judge to exercise discretion to grant the motion for compassionate release." *See Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Here, Cabrera argues that risk of severe illness from COVID-19, family circumstances, and "other reasons" present "extraordinary and compelling circumstances" warranting a sentence reduction. *See generally* Rec. Docs. 351, 374.

**1. Medical Conditions**

Under the Sentencing Commission's nonbinding guidance, extraordinary conditions can exist if the defendant suffers from a terminal illness or another "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected

6

to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). In some cases, courts have granted compassionate release where the defendant demonstrates an increased risk of serious illness from COVID-19. *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021), *cert. denied*, 141 S. Ct. 2688 (Mem.) (U.S. May 24, 2021) (citations omitted). Even where courts have denied release, some courts have assumed that the pandemic, combined with underlying conditions, might be an extraordinary and compelling reason for compassionate release. *Id*. However, a generalized fear of COVID-19 does not rise to an "extraordinary and compelling reason." *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."). Further, allegations that a facility is poorly managed and that a defendant has been housed with inmates who have tested positive, without more, do not necessarily warrant a sentence reduction under § 3582. *See United States v. Haynes*, No. CR 14-23, 2020 WL 4601633, at *3 (E.D. La. Aug. 11, 2020) (citations omitted) ("Although [defendant] claims that Oakdale is poorly managed and that he has been housed with inmates who have tested positive for the virus, numerous courts have concluded that these types of allegations do not warrant a sentence reduction under § 3582.").

Cabrera allegedly suffers from a variety of chronic medical conditions, including obesity, diabetes, high blood pressure,

and an immunocompromised condition. Rec. Doc. 351 at 3. These conditions would create a high risk of severe illness from COVID-19, and thus, they could, coupled with COVID-19, constitute an extraordinary and compelling reason warranting compassionate release. *See Thompson*, 984 F.3d at 434. Defendant explains that his circumstances are particularly dire because emergency conditions are "materially affecting the day to day function of [the] institution" where he is confined. Rec. Doc. 358 at 1. He claims that he has been relocated to a unit "just steps away" from another unit on lockdown due to COVID-19 and that prison staff put all inmates "in danger" because they move throughout the facility unmasked. Rec. Doc. 358 at 1; Rec. Doc. 369 at 1.

Although concerning, these conditions alone are not sufficient to warrant compassionate release. *See, e.g.*, *United States v. Washington*, No. 16-19, 2020 WL 4000862, at *5 (E.D. La. July 15, 2020) (denying compassionate release because "there is no COVID-19 outbreak" at defendant's facility and defendant did not establish the prison is "unable to manage her health issues and the risks of COVID-19."); *United States v. Reed*, 464 F. Supp. 3d 854, 862 (E.D. La. 2020) (denying compassionate release when evidence demonstrates "BOP is taking all . . . symptoms and ailments seriously"). Cabrera does not provide evidence that his medical conditions currently impact his ability to provide self-care within the prison. *See generally*

8

Rec. Docs. 351, 358, 369; *see also* Rec. Doc. 361 at 13 ("BOP has been able to successfully provide medical care to Cabrera for his underlying medical conditions."). There is no apparent COVID-19 outbreak currently at Bastrop, where Cabrera is incarcerated. *See COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited January 4, 2022) (showing zero inmates out of 988 total inmates and two staff testing positive for COVID-19). Moreover, Cabrera has not established that Bastrop is failing to manage the risks of COVID-19. *See generally* Rec. Docs. 351, 358, 369; *see also* Rec. Doc. 361 at 2-7, 13-14. Accordingly, the Court finds Cabrera has not met his burden of demonstrating his medical conditions, by themselves, warrant compassionate release.

### 2. Family Circumstances

When a defendant requests a sentence reduction based on family circumstances, the court may only grant release in "extreme circumstances." *United States v. Bower*, No. 16-96, 2020 WL 5942195, at *2 (E.D. La. Oct. 7, 2020) (collecting cases). The Sentencing Commission suggests that extraordinary and compelling circumstances may arise from "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant

9

would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).

Here, Cabrera states that compassionate release would allow him to "take care of [his] elderly [f]ather" and spend time with his thirteen grandchildren. Rec. Doc. 351 at 3. Defendant explains that he has learned "a lot" in the past eleven years and release would permit him to show his grandchildren "the right way of life." *Id.* However, defendant has not carried his burden of showing these family circumstances warrant compassionate release. First, Cabrera invokes familial relationships not contemplated by the nonbinding guidelines. *See* U.S.S.G. § 1B1.13, cmt. n.1(C) (referring to a spouse, registered partner, or child, not a parent or grandchild); *see also United States v. Tyler*, 2021 WL 736467, at *3 n.29 (E.D. La. Feb. 25, 2021). But regardless, Cabrera provides no evidence that he is the only available caregiver for his father or grandchildren, or that the father or grandchildren are incapacitated. *See Tyler*, 2021 WL 736467, at *3. As such, defendant's stated family circumstances do not provide grounds for compassionate release.

### 3. Other Reasons

Courts may also find extraordinary and compelling circumstances warranting compassionate release for "other reasons." *Thompson*, 984 F.3d at 434; *see also Shkambi*, 993 F.3d at 393 ("[N]either the [U.S.S.G. § 1B1.13] policy statement nor

the commentary to it binds a district court addressing a prisoner's own motion under § 3582."). Here, defendant argues that the disparity between his current sentence and the sentence he would receive if charged today provides an additional reason for compassionate release. Rec. Doc. 374 at 3-4. Passed in 2018, Section 401(a)(1) of the First Step Act defines a serious drug felony in 18 U.S.C. § 924(e)(2) as one where "the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5220. Essentially, this provision indicates that the minimum sentence included in 18 U.S.C. § 924(e)(2) does not apply to an offender whose prison term for a prior drug offense concluded more than fifteen years prior to another offense. *See id*. In 1987, when Cabrera was nineteen years old, he was convicted of a drug crime for which he was sentenced to five years in prison. Rec. Doc. 374-2 at 1. His 1992 release date for this crime is, thus, seventeen years before Cabrera's current drug conviction. *See id.; see also* Rec. Doc. 1. Meaning, if convicted today, Cabrera's 1987 drug conviction would likely not have enhanced his 2009 sentence, as it did then, because the first sentence concluded more than fifteen years prior to defendant's second conviction. *See* Rec. Doc. 374 at 3-4. Defendant admits that this provision of the First Step Act is not retroactive, but argues "the severity of a pre-First Step

11

Act sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A)." Rec. Doc. 374-1 at 4 (internal quotations omitted).

In line with other circuits, the Fifth Circuit recently ruled that certain First Step Act amendments can constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. Cooper*, 996 F.3d 283, 286, 289 (5th Cir. 2021) (citing *Shkambi*, 993 F.3d at 389-92) (instructing the district court to consider on remand whether "the **nonretroactive** sentencing changes to his § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence") (emphasis added); *United States v. McCoy*, 981 F.3d 271, 386 (4th Cir. 2020) ("The fact that Congress chose not to make [a provision] of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release."); *United States v. McGee*, 992 F.3d 1035, 1046 (10th Cir. 2021).[2] Where courts have found a sentencing disparity to

---

[2] *Cooper* specifically referred to nonretroactive sentence reductions for § 924(c) convictions, but there is reason to believe the Fifth Circuit's ruling also applies to sentencing disparities for § 841(b)(1)(A) offenses

warrant compassionate release, they often weigh the extent of the disparity and combine it with an analysis of other factors that could create the extraordinary and compelling circumstances warranting compassionate release. *See, e.g.*, *Cooper*, 996 F.3d at 289; *McGee,* 992 F.3d at 1047 (finding a "combination" of a sentence disparity and "defendant's unique circumstances" constitute extraordinary and compelling reasons); *United States v. Smith*, No. 5:91-CR-50088-01, 2021 WL 4555257, at *5 (W.D. La. Oct. 5, 2021) (weighing the extent of the sentencing disparity); *United States v. Cisneros*, No. 99-00107 SOM, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020) (stating that a defendant who would now be subject to a reduced sentence, who is "particularly vulnerable to COVID-19," and who presents "compelling evidence of his rehabilitation" could be entitled to compassionate release).

To assess whether Cabrera's sentencing disparity may constitute extraordinary and compelling circumstances, we first

---

enhanced by § 924(e)(2). The Court explains that after *Shkambi*, district courts are no longer "bound by § 1B1.13 when considering motions brought by prisoners . . . under 18 U.S.C. § 3582(c)(1)(A)." *Cooper*, 996 F.3d at 289. As such, courts can consider "nonretroactive sentencing changes to . . . § 924(c) convictions." *Id.* There is no reason that this explanation does not follow for another nonretroactive sentencing disparity, such as the one affecting Cabrera. *See id.* Furthermore, in *McGee*, the defendant was sentenced to mandatory life imprisonment for violating § 841(b)(1)(A) and for having two prior felony drug convictions. *McGee*, 992 F.3d at 1037. With these offenses, which are similar to Cabrera's, the Court still found that district courts can consider whether a sentencing disparity under § 841(b)(1)(A), in combination with other circumstances, constitutes extraordinary and compelling reasons warranting compassionate release. *McGee*, 992 F.3d at 1048.

13

examine the extent of his sentence disparity. Cabrera was sentenced for participating in a conspiracy to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A). Rec. Doc. 102. If convicted today, Cabrera would face a mandatory minimum of ten years in prison. *See* 21 U.S.C. § 841(b)(1)(A). As mentioned previously, Cabrera would not be required to serve a mandatory minimum of fifteen years, because his 1987 drug conviction would not be considered a "serious drug felony" under the First Step Act. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5220. In contrast, when Cabrera pled guilty, he faced, and was sentenced to, a mandatory minimum of twenty years, which at the time was the minimum sentence for violating § 841(b)(1)(A) with a prior felony drug offense. Rec. Doc. 102. Accordingly, Cabrera's total sentence today would be roughly half of his current sentence: ten years, rather than twenty years. Other courts have found this type of sentencing disparity to constitute extraordinary and compelling grounds for a sentence reduction. *See, e.g.*, *United States v. Lee*, No. 04-11, 2021 WL 3129243, at *4-5 (E.D. La. July 23, 2021) (finding when a sentence today would equal half the defendant's current sentence, that, among other factors, constituted extraordinary and compelling circumstances); *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) (finding when a current sentence was three times longer than what it would be today, the

sentence disparity constituted extraordinary and compelling circumstances). The Court, therefore, finds that the gross disparity between Cabrera's sentence and a likely sentence for identical criminal conduct today, together with Cabrera's high risk of severe illness from COVID-19, constitutes extraordinary and compelling grounds for compassionate release. *See United States v. Brown*, 457 F. Supp. 3d 691, 703 (S.D. Iowa 2020) ("[I]t is hard to argue that the manifest unfairness of keeping a man in prison for decades more than if he had committed the same crime today is neither extraordinary nor compelling."); *Cisneros*, 2020 WL 3065103, at *3 (explaining that a defendant who would now be subject to a reduced sentence and who is particularly vulnerable to COVID-19 might show entitlement to compassionate release); *United States v. Brown*, 2020 WL 7401617, at *7 (E.D. Wis. Dec. 17, 2020) (collecting cases where courts recognized that persons with a number of co-morbidities are at an even greater risk of severe illness from COVID-19).

## C. § 3553(a) Factors

A significant sentence disparity, plus heightened vulnerability to COVID-19, alone would not be sufficient for a sentence reduction. The Court must also consider the applicable § 3553(a) factors to determine whether compassionate release is warranted. *Ward*, 11 F.4th at 361. Mindful of these factors, the Court has carefully considered the record pertaining to (1)

Cabrera's sentence relative to the nature and seriousness of his offense; (2) his personal history and characteristics; (3) the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to provide rehabilitative services; (7) the applicable guideline sentence; and (8) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). These factors are measured under the overarching principle that a sentence must "be sufficient, but not greater than necessary" to achieve sentencing goals, e.g. promote respect for law and discourage recidivism. *Id.* After considering the facts and circumstances pertaining to these factors, the Court finds additional reasons to justify compassionate release.

First, we consider that Cabrera's crimes were serious offenses. He participated in a large-scale conspiracy to distribute a significant quantity of methamphetamine. Rec. Doc. 102. Additionally, when Dallas Police Officers and DEA Agents searched Cabrera's body shop in 2009, they found firearms present. Rec. Doc. 101. Furthermore, in 1987 at age nineteen, Cabrera also pled guilty to possession of heroin. *Id.* Despite the seriousness of these offenses, the crimes were all

16

nonviolent, suggesting that Cabrera is less likely to perpetuate violent crimes if released from prison. Moreover, Cabrera's age (fifty-three) supports the conclusion that he is statistically less likely to recidivate upon release. *See* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 30 (2017) ("[O]lder offenders are substantially less likely to recidivate following release compared to younger cohorts."). Cabrera has also acknowledged his participation in these significant crimes and has expressed remorse in his writings. Rec. Doc. 351 at 3.

Notably, Cabrera has made extreme progress toward rehabilitation. Throughout his ten years in prison, Cabrera has reportedly not once committed an infraction. Rec. Doc. 351-1 at 5. He has no history of violence and his "overall male pattern risk level" is minimum.[3] *Id.; see also* Rec. Doc. 369 at 2. Additionally, Cabrera has completed several education courses, including drug treatment, drug education, literacy, parenting skills, anger management, and successful communications. Rec. Doc. 351-1 at 2. Cabrera's efforts in prison indicate that he less likely to be a danger to the community.

---

[3] PATTERN is a risk assessment system developed after passage of the First Step Act. Nat'l Inst. of Just., U.S. Dep't of Just., *2020 Review and Revalidation of the First Step Act Risk Assessment Tool* 2 (2021). It is designed to predict the likelihood of general and violent recidivism for all BOP inmates three years post release. *Id.* The tool provides predictive scores, developed, and validated for males and females separately. *Id.*

17

Regarding the need to provide just punishment and to promote respect for the law, Cabrera has already served over ten years in prison, equaling over fifty percent of his total sentence. *See* Rec. Doc. 238. Cabrera's time served represents slightly more than the mandatory minimum that an offender in similar circumstances would be sentenced today. *See* 21 U.S.C. § 841(b)(1)(A). Time served, thus, represents a substantial punishment reflecting the gravity of the underlying offense. *See Thompson*, 984 F.3d at 434-35 (recognizing that compassionate release has been granted to "defendants who ha[ve] already served the lion's share of their sentences"); *cf. United States v. Ford*, No. 4:13-CR-215, 2020 WL 5073914, at *7 (E.D. Tex. Aug. 27, 2020) (denying compassionate release in part because the defendant had only "served such a small fraction of his sentence").

Lastly, a particularly relevant factor in this case is the "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Due to the disparity between Cabrera's twenty-year sentence and sentences imposed after enactment of the First Step Act on similar defendants with similar records, this factor favors reducing Cabrera's sentence. As discussed above, a defendant convicted today of the same charges as Cabrera would face a statutory minimum prison term that is half of what Cabrera faced. *See* 21 U.S.C. § 841(b)(1)(A).

18

In view of foregoing considerations, the Court concludes that Cabrera's imprisonment should be reduced to time served with all other terms and conditions previously imposed to remain in effect but executory only after a successful 14-day quarantine period and medical clearance prior to release, as ordered earlier.[4] *See* Rec. Doc. 238 at 3-4.

New Orleans, Louisiana this 7th day of January, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] As the Court grants defendant's motion for compassionate release, it need not address defendant's request for home confinement.